

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-20-2005

# Bicak v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3009

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Bicak v. Atty Gen USA" (2005). *2005 Decisions.* Paper 806.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/806

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-3009

NECMEDDIN BICAK,
                              Petitioner

v.

ALBERTO GONZALES,[*] Attorney General
of the United States,
                              Respondent

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS
Agency No. A79-419-817

Submitted Under Third Circuit LAR 34.1(a)
July 1, 2005

Before: ROTH, RENDELL, and BARRY, <u>Circuit Judges</u>

(Opinion Filed: July 20, 2005)

OPINION

---

[*]Attorney General Alberto Gonzales has been substituted for former Attorney General John Ashcroft, the original respondent in this case, pursuant to Fed. R. App. P. 43(c).

BARRY, <u>Circuit Judge</u>

Necmeddin Bicak, a native and citizen of Turkey, seeks asylum on the ground that his former girlfriend's family has sought, and supposedly will seek, retribution for his attempt to marry her. We will deny the petition for review.

**I. Background**

This is a story of two young people who wanted to get married despite the objections of the young woman's family. Bicak, a Muslim, fell in love with the young woman and asked her family for permission to marry her. The family refused and, in hopes that her family would eventually support their union, Bicak asked her to move into the house he shared with his family. She agreed, but shortly after she moved in, members of her family came to Bicak's house to retrieve her. According to Bicak, two members of that group were armed and threatened to kill him if she did not return home.

The young woman did return home, but her family was apparently still angered that her honor had been "besmirched" by having lived with a man to whom she was not married. The family allegedly swore to "avenge this with blood" and told Bicak "we will kill that which you love." Bicak contends that the family made threatening phone calls and harassed him in public.

After ten to twelve days of such treatment, Bicak decided to leave Turkey. He claimed that he could not report the threats to the police because the young woman's family was "connected," and that he could not move to another part of Turkey because he

would be required to register in his new town, and the family would find him. Therefore, he left Turkey in late June of 2001, and arrived in the United States on October 7, 2001.

That same day, the Immigration and Naturalization Service ("INS")[1] interviewed Bicak at the airport. He told the INS officer that he left Turkey because he was "scared" of the young woman's family, but that he had "never been persecuted by the Turkish government or any other officials in Turkey." A169-70. On October 11, 2001, Bicak again explained that he left Turkey for fear he would be killed by his former girlfriend's family, and claimed he had no idea why her family did not approve of him. The next day, though, Bicak was again interviewed, this time with an attorney present, and stated that the two families had opposing political and religious views, and that was why his former girlfriend's family did not want him to marry her.[2]

On October 1, 2002, Bicak filled out an application for asylum and withholding of removal, and requested protection under the United Nations Convention Against Torture ("CAT"). He stated that he was seeking asylum based on his religion and membership in a particular social group, and that he had been threatened by his former girlfriend's family because of "the difference in her family and mine in terms of political and religious

---

[1] On March 1, 2003, the Immigration and Naturalization Service's functions were transferred to the Department of Homeland Security. See 6 U.S.C. § 271 (2002).

[2] Bicak conceded that he was not affiliated with a political party in Turkey, but stated that his, and his family's, political views were aligned with the conservative Fazilet Party, which ceased to officially exist in 2001. His former girlfriend's family apparently ascribed to a more liberal, left-leaning party.

3

outlook." A218. He made similar statements during his testimony before the IJ, but provided no corroborating evidence for any part of his story.

Based on his finding that Bicak was not credible, the Immigration Judge ("IJ") denied his application on all grounds, and also found his application for asylum frivolous. In a per curiam opinion issued June 24, 2004, the BIA affirmed in all respects except the IJ's conclusion that the asylum application was frivolous.[3] Bicak filed a petition for review with this Court on July 13, 2004.

## II. Legal Analysis

We have jurisdiction to review the petition pursuant to 8 U.S.C. § 1252(a). Because the BIA wholly deferred to the IJ's findings on adverse credibility and ineligibility for relief, we "review the IJ's decision to assess whether the BIA's decision to defer was appropriate." Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001); see also Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004) (explaining that, when the BIA "substantially relied" on the adverse credibility finding of the IJ, a court has jurisdiction to review both opinions ).[4] We review any factual findings, including a finding of

---

[3]The issue of whether the asylum application was frivolous is not part of this appeal.

[4]Here, the BIA stated that:

> "We find support in the record for the [IJ's] adverse credibility finding. The inconsistencies noted by the [IJ] are found in the record and involve major events which go to the heart of the respondent's claim. A persecution claim that lacks veracity cannot satisfy the burdens of proof and persuasion necessary to establish eligibility for asylum and withholding of removal."

A2 (internal citations omitted).

4

adverse credibility, under the substantial evidence standard.  See Xie, 359 F.3d at 243; 8

U.S.C. § 1252(b)(4) ("administrative findings of fact are conclusive unless any reasonable

adjudicator would be compelled to conclude to the contrary").

An adverse credibility determination may not be the result of speculation, but

instead must be based on evidence in the record.  See Gao v. Ashcroft, 299 F.3d 266, 272

(3d Cir. 2002).[5]  Minor inconsistencies that do not go to the heart of the asylum claim do

not provide a sufficient basis for such a determination.  See id.  Here, the IJ's adverse

credibility determination, for which the BIA found support in the record, was based on

the IJ's conclusion that Bicak's "theory of asylum seems to vary at whatever point in time

he is interviewed."  A46.  The IJ pointed to Bicak's statement that he had no idea why his

former girlfriend's family did not support their marriage, and compared that with his later

statement that the family was motivated by some sort of political or religious opposition.

The IJ also noted that there was nothing in the record, not even from Bicak's parents with

whom he could have easily communicated, to support any of his statements.  We find that

there is substantial evidence in the record to support the IJ's adverse credibility

determination, to which the BIA appropriately deferred after finding that the

---

[5]Section 101(a)(3) of the Real ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 305, amends 8 U.S.C. § 1158(b)(1) by adding new provisions concerning the alien's burden of proof; however, that section "take[s] effect on the date of the enactment of this division and shall apply to applications for asylum, withholding, or other relief from removal made on or after such date."  Real ID Act of 2005 § 101(h)(2).  Because Bicak filed his application in November of 2002, the Real ID Act does not apply, and we analyze the IJ's credibility findings under "old" law.

inconsistencies noted by the IJ involved "major events" which go to the heart of Bicak's claim. A2.

But even if Bicak were to be believed, his asylum application would still fail. Two components of a successful asylum application include proof that any persecution was "on account of" a statutorily protected ground,[6] and that the persecution was committed by forces the government is either unable or unwilling to control. See Mulanga v. Ashcroft, 349 F.3d 123, 132 (3d Cir. 2003). Bicak did not provide evidence of either. Rather, it appears clear that if his former girlfriend's family indeed threatened him, it was because he took her from her family's home without their consent, and not because of anyone's political or religious views. Furthermore, there is no indication that this is anything other than a private family feud; there is nothing in the record to suggest that the Turkish government was either unable or unwilling to "control" the young woman's family, other than Bicak's unsupported testimony that the family had "connections" with the local police.

Because there is no basis for a grant of asylum, Bicak's request for withholding of removal similarly fails. Furthermore, we see no evidence that would suggest that it is more likely than not that Bicak will be subjected to torture upon his return to Turkey,

---

[6]This standard was also amended by the Real ID Act, and now requires an applicant to establish that one of the protected statutory factors "was or will be at least one central reason for persecuting the applicant," 8 U.S.C. § 1158(b)(1)(B)(i); however, as explained above, that new standard does not apply to Bicak's case.

making him ineligible for relief under the CAT.  See Lukwago v. Ashcroft, 329 F.3d 157, 182-83 (3d Cir. 2003).

### III.  Conclusion

For the forgoing reasons, the petition for review will be denied.